```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES ex rel. JOHN A. WOOD et al.,                              :
                                                                        :
                                    Plaintiffs,                         :   19-CV-4029 (JMF)
                                                                        :
                    -v-                                                 :   OPINION AND ORDER
                                                                        :
ALLERGAN, INC.,                                                         :
                                                                        :
                                    Defendant.                          :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      This is Plaintiff-Relator John A. Wood's third effort to bring claims against Defendant Allergan, Inc. ("Allergan"), under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, and various state analogs. Following an interlocutory appeal, the Court dismissed Wood's first suit eight years after it had initially been filed pursuant to the FCA's first-to-file rule. *See id.* § 3730(b)(5). Shortly thereafter, he filed a second suit, but quickly voluntarily dismissed it in the face of Allergan's contention that it, too, violated the first-to-file rule. Adhering to the adage that "if at first you don't succeed, try, try again," Wood now tries for a third time. But while his third effort clears the first-to-file hurdle, it runs headlong into another obstacle: timeliness. For the reasons that follow, the Court agrees with Allergan that Wood's federal claims are time barred and that he is not entitled to equitable tolling for the six years it took for the Government to investigate and decide not to intervene. Accordingly, his FCA claims are dismissed, and the Court declines to exercise supplemental jurisdiction over his state-law claims.

## BACKGROUND

      The Court assumes familiarity with the background of this litigation, which is described at length in this Court's prior opinion, *see United States ex rel. Wood v. Allergan, Inc.*, 246 F.

Supp. 3d 772, 782-87 (S.D.N.Y. 2017) ("*Wood I*"), and in the Second Circuit's decision on appeal, *see United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 166-68 (2d Cir. 2018).

Briefly stated, Wood alleges that Allergan violated the FCA and state-law analogs through a kickback scheme that spanned from 2003 to 2011. *See* ECF No. 8 ("Compl."), ¶¶ 39, 260; *see also Wood I*, 246 F. Supp. 3d at 784. Wood also alleges that Allergan terminated him on July 6, 2010, in retaliation for engaging in protected activity under the FCA. *See* Compl. ¶ 266. Wood filed his first action asserting these claims nearly ten years ago, on July 26, 2010. *See Wood I*, 246 F. Supp. 3d at 786. At the time, two other suits alleging the same kickback scheme were pending under seal in other federal courts. *See id.* Accordingly, Wood's first suit violated the FCA's first-to-file rule, which provides that "[w]hen a person brings a [*qui tam* action under 31 U.S.C. § 3730(b)], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). In 2012, however, the two earlier-filed cases were unsealed and dismissed. *See Wood I*, 246 F. Supp. 3d at 786. Thus, when the Government decided in March 2016 not to intervene in *Wood I* and the case was unsealed, there was no longer another action "pending." *Id.*

On August 4, 2016, Allergan moved to dismiss Wood's operative complaint in *Wood I*, citing the first-to-file rule. *Id.* at 787. In a lengthy opinion addressing an issue of first impression in the Second Circuit, but on which other courts had divided, this Court held that, because the two earlier-filed actions had been dismissed, Wood could cure his first-to-file violation simply by amending his complaint. *See id.* at 793-800 (citing cases reflecting the "radically different approaches" taken by federal courts on the issue, including *Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015), which held that the district court had discretion to allow cure by amendment). On May 4, 2017, the Court certified the issue for interlocutory appeal, *see* Docket No. 10-CV-5645 ("*Wood I* Docket"), ECF No. 124, and thereafter approved an agreement between the parties to toll "[a]ny and all limitation of action time periods (e.g.,

2

statute of limitations)" from May 4, 2017, through and until the Second Circuit issued its mandate in connection with the interlocutory appeal, *see Wood I* Docket, ECF No. 128.

On August 9, 2018, the Second Circuit reversed, holding that Wood could not cure the initial first-to-file violation by amending his complaint, and directed this Court to dismiss the action without prejudice on remand. *See Wood*, 899 F.3d at 175. On October 3, 2018, two days after the Second Circuit's mandate issued, the Court dismissed *Wood I*. *See Wood I* Docket, ECF Nos. 139-40. Approximately three weeks later, on October 25, 2018, Wood filed his second suit ("*Wood II*"), alleging the same claims he had alleged in *Wood I*. *See* Docket No. 18-CV-9857 (JMF) ("*Wood II* Docket"), ECF No. 1; ECF No. 32 ("Opp'n"), at 6. On February 8, 2019, Allergan moved to dismiss, arguing (among other things) that *Wood II* violated the first-to-file bar because the time for Wood to petition the Supreme Court for review of the Second Circuit's decision had not yet expired and *Wood I* was therefore still "pending." *Wood II* Docket, ECF No. 29, at 3-8. On March 1, 2019, Wood moved to voluntarily dismiss *Wood II* "to avoid any further litigation over the first-to-file bar that might delay resolution of his claims." *Wood II Docket*, ECF Nos. 32-33; Opp'n 6-7. The Court dismissed *Wood II* on March 11, 2019. *Wood II* Docket, ECF No. 38.

Less than two months later, on May 6, 2019, Wood filed the pending action, pressing the same claims that he had pressed in *Wood I* and *Wood II*. Allergan now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss on the ground that Wood's FCA claims are untimely. *See* ECF No. 26 ("Def.'s Mem."), at 5-17.

## DISCUSSION

Under 31 U.S.C. § 3731(b), a *qui tam* action under the FCA

may not be brought —

    (1) more than 6 years after the date on which the violation of section 3729 is
        committed, or

>   (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

Wood concedes that, on its face, this provision bars his FCA claims, as those claims are based on conduct that occurred between 2003 and 2011 and "facts material to" the claims were known to the Government no later than July 26, 2010, when *Wood I* was filed. *See* Opp'n 1. Nevertheless, he opposes Allergan's motion on the ground that he is entitled to equitable tolling of the limitations period as of July 26, 2010. *See id.* "Equitable tolling," he alleges in the Complaint, "is appropriate in circumstances such as this, in which the plaintiff proceeded diligently but was prevented from proceeding with the action based on extraordinary circumstances beyond the plaintiff's control" — namely, "the statutory requirement that Relator Wood's complaint remain under seal for a period of six years while the Government investigated his claims before making its intervening decision." Compl. ¶ 283.

In deciding whether Wood is entitled to equitable tolling, the threshold question is whether Section 3731(b) is a statute "of limitation," a statute "of repose," or a hybrid. *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017). The distinction between statutes of limitation and statutes of repose is important because the former are generally subject to equitable tolling, while the latter are not. *See Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017). "Statutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims." *ANZ Sec.*, 137 S. Ct. at 2049 (internal quotation marks omitted). Thus, courts may typically consider equitable principles — including the "discovery rule," which provides that "accrual is delayed until the plaintiff has discovered his cause of action" — in applying statutes of limitations. *Singleton v. Clash*, 951 F. Supp. 2d 578, 585 (S.D.N.Y. 2013) (internal quotation marks omitted); *see Young v. United States*, 535 U.S. 43, 49 (2002). By

4

contrast, statutes of repose "create an absolute bar on a defendant's temporal liability." *ANZ Sec.*, 137 S. Ct. at 2049 (internal quotation marks omitted); *see Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) ("[A] statute of repose *extinguishes* a plaintiff's cause of action after the passage of a fixed period of time." (internal quotation marks omitted)); *accord Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 140 (2d Cir. 2013). As a result, statutes of repose are typically not subject to the discovery rule or equitable tolling. *See CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) ("Statutes of repose . . . generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control.").

Section 3731(b) is, in part, a statute of limitations and, in part, a statute of repose. For starters, Section 3731(b)(1) creates a statute of limitations that is subject to an express discovery rule under Section 3731(b)(2). *See United States v. Inc. Vill. of Island Park*, 791 F. Supp. 354, 362-63 (E.D.N.Y. 1992) (noting that the FCA was amended to "include an explicit tolling provision on the statute of limitations" (quoting S. Rep. No. 345, 99th Cong., 2d Sess. 30 (1986)). But Section 3731(b)(2) is also a statute of repose insofar as it provides that "in no event" may an FCA action be brought "more than 10 years after the date on which the violation is committed." As was the case with the statute at issue in *ANZ Securities*, "[t]his instruction admits of no exception and on its face creates a fixed bar against future liability." 137 S. Ct. at 2049. And as was the case in *ANZ Securities*, the ten-year bar in the statute "runs from the defendant's last culpable act" (here, from "the date on which the violation is committed"), not from the plaintiff's (or the Government's) discovery of the claim. *Id.* Together, these features are "close to a dispositive indication that the statute is one of repose." *Id.*

Contrary to Wood's assertions, *see* Opp'n 13-14, neither *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019), nor *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015), calls for a different conclusion. To be sure,

both cases referred to Section 3731(b) as a "statute of limitations." *Hunt*, 139 S. Ct. at 1510-11; *Carter*, 135 S. Ct. at 1974. But neither decision actually addressed whether the FCA's ten-year bar is a statute of repose or whether it is subject to equitable tolling. *See Hunt*, 139 S. Ct. at 1511 (noting that the complaint was filed "within 10 years after the violation occurred"); *Carter*, 135 S. Ct. at 1974 (noting that the complaint was filed "more than six years after the alleged fraud" but fewer than ten years after). If anything, *Carter* supports the conclusion that the ten-year bar is a statute of repose paired with a shorter statute of limitations, as the Court observed that "the FCA's statute of limitations provision" requires "that a *qui tam* action must be brought within six years of a violation or within three years of the date by which the United States should have known about a violation," and separately that "[i]n no circumstances . . . may a suit be brought more than 10 years after the date of a violation." *Carter*, 135 S. Ct. at 1974. In any event, *ANZ Securities* squarely addressed how to identify a statute of repose, and its analysis (of Section 13 of the Securities Act) maps almost perfectly on to the FCA. Thus, loose language notwithstanding, neither *Carter* nor *Hunt* supports Wood's position here.

With that, the Court turns to Wood's claims. For starters, Wood's claims based on Allergan's alleged violations before December 8, 2007 — ten years prior to the date on which this case was filed, minus the 515 days tolled pursuant to the parties' tolling agreement between May 4, 2017, and the issuance of the Second Circuit's mandate on October 1, 2018, *see Wood I* Docket, ECF Nos. 128, 139 — are plainly time barred because Wood is not entitled to equitable tolling of the ten-year statute of repose. *See CTS Corp.*, 573 U.S. at 9-10.[1] Wood is on stronger

---

[1] One could argue that the ten-year statute of repose negates the parties' agreement to toll "[a]ny and all limitation of action time periods (e.g., statute of limitations)." *Wood I* Docket, ECF No. 128. But several courts in this Circuit have held that statutes of repose can be tolled by agreement, citing the "public interest" served by such agreements. *See Hugler v. First Bankers Trust Servs., Inc.*, 12-CV-8649 (VB), 2017 WL 1194692, at *8-9 (S.D.N.Y. Mar. 30, 2017); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-MD-2017 (LAK), 2012 WL 6584524, at *2 (S.D.N.Y. Dec. 18, 2012). Here, the Court need not and does not decide the issue because, for

ground in arguing that equitable tolling is available for his claims relating to alleged violations on or after December 8, 2007. *See, e.g.*, *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 519-20 (6th Cir. 2007) (applying equitable tolling to the six-year limitations period).[2] But the Court need not decide that issue because, even if the three- and six-year limitations periods in Section 3731(b) were subject to equitable tolling, Wood is not entitled to it here.

A "litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000) ("Equitable tolling applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights." (internal quotation marks and alterations omitted)). In addition, the litigant must "further demonstrate that those circumstances *caused* him to miss the original filing deadline." *Harper*, 648 F.3d at 137 (emphasis added). Wood cannot carry his burden to establish the required elements.

First, Wood is not entitled to equitable tolling from July 26, 2010, to December 14, 2012, when the second of the two suits filed before *Wood I* was dismissed, as Wood's case was barred during that period not by the Government's delay or by the rule that the Second Circuit later

---

the reasons discussed below, Wood's claims are time barred even if the tolling agreement were fully effective.

[2] As the Court observed in its decision in *Wood I*, however, "Congress could have . . . includ[ed] a provision in the FCA tolling the statute of limitations during the pendency of a related lawsuit, but it did not." 246 F. Supp. 3d at 793 n.11. Given that, and the fact that Congress did include a "discovery rule" in the FCA, one could conclude that Wood's argument is "inconsistent with the text of the relevant statute." *Young*, 535 U.S. at 49.

7

adopted in the interlocutory appeal, but by the first-to-file rule itself. The first-to-file rule is "carefully calibrated to strike the golden mean between adequate incentives for whistle-blowing insiders . . . and discouragement of opportunistic plaintiffs." *See Wood*, 899 F.3d at 174 (internal quotation marks omitted). The balance it strikes accounts for the possibility that other relators "may very well be barred by the time they get to the courthouse," and may run up against the statute of limitations if they later have an opportunity to refile. *Id.* ("[I]n many circumstances, absent a statute of limitations issue, the relator will be able to re-file her action."). Granting equitable tolling during the period in which Wood was statutorily barred from filing would disrupt this careful balance by reducing the incentive for relators to rush to be the first to file. Instead, opportunistic relators could wait for dismissals of cases brought by more diligent relators and swoop in after, with the benefit of equitable tolling.

Nor is Wood entitled to equitable tolling for the periods from December 14, 2012, to May 4, 2017, when the parties' tolling period began, and from October 1, 2018, to October 3, 2018, the date on which *Wood I* was dismissed. "[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is *prevented* in some way from exercising his rights." *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017) (summary order) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)) (emphasis added). Here, Wood was not "prevented" from timely refiling: Once the earlier-filed actions were dismissed, Wood could have immediately sought dismissal of *Wood I* and brought a new action. Indeed, Wood did exactly that in *Wood II*: He sought to voluntarily dismiss the case "to avoid any further litigation over the first-to-file bar that might delay resolution of his claims." *See* Opp'n 6-7, 19 n.7. Wood argues that he did not have the benefit of the Second Circuit's decision when he was litigating *Wood I*, whereas he did when he was litigating *Wood II*. *See* Opp'n 20. That is true, but to say that Wood did not know the consequences of plowing ahead is not to say that he was *prevented* from doing otherwise. *Cf. Jenkins v. Greene*, 630 F.3d 298, 305

8

(2d Cir. 2010) ("Jenkins did not file his federal petition within the allowable time limit, and his explanation for his failure to do so boils down to the claim that he was thwarted by a mistaken reading of New York case law to impose a requirement that did not in fact exist. Under the law, such a mistaken belief is not a basis for equitable tolling."). Moreover, he was on notice — from the divide among other federal courts — that the first-to-file rule might mandate dismissal of his suit. It was Wood's choice to keep litigating *Wood I* despite that risk (presumably to secure his place as the first to file after the earlier-filed suits had been dismissed), not the Government's delay or the Second Circuit's decision, that caused his untimely refiling of this lawsuit. It follows that these were not the "rare and exceptional circumstances in which a party [was] *prevented* in some way from exercising his rights," such that equitable tolling would be appropriate. *Roy*, 684 F. App'x at 23.

The principal cases on which Wood relies — *Kassman v. KPMG LLP*, No. 11-CV-3743 (LGS), 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015), and *Alvarez-Machain v. United States*, 107 F.3d 696 (9th Cir. 1996) — do not suggest otherwise. In *Kassman*, the court did hold that delays "attributable to the Court" may be equitably tolled. *See Kassman*, 2015 WL 5178400, at *4. But, again, Wood's untimely filing here was ultimately due to his own litigation decisions, not to "the reassignment of judges" or to the "extraordinary amount of time" taken by a court "considering motions." *Id.* And although equitable tolling was granted in *Alvarez-Machain* based, in part, on the "numerous, complex issues of first impression" involved in the case, the plaintiff there was genuinely "prevented" from pursuing his civil claims because of his "abduction," incarceration for over two years, and trial "facing criminal charges of the highest gravity in a foreign country whose language he did not understand." *Alvarez-Machain*, 107 F.3d at 701. Needless to say, Wood's strategic decision to assume the risk of dismissal in *Wood I* in order to secure first-to-file status does not compare.

Finally, Wood invokes this Court's observation in *Wood I* that not allowing amendment to cure a first-to-file violation would "provide a windfall to defendants in Allergan's position" because "it could result in the relator's claims being precluded by . . . the statute of limitations — through no fault of his own." *Wood I*, 246 F. Supp. 3d at 798. The Second Circuit's decision will undoubtedly make it more difficult for relators in Wood's position to get out of the gate. Timeliness aside, a relator who learns of an earlier-filed suit being dismissed must now scramble to voluntarily dismiss her own suit (with both the Government's and the Court's consent, *see* 31 U.S.C. § 3730(b)(1)) and be the first to refile — if refiling is even possible given the FCA's "public disclosure bar," *see* 31 U.S.C. § 3730(e)(4); *see also Wood I*, 246 F. Supp. 3d at 798. But this hardship is not a basis for equitable tolling. After all, the Government is the real party in interest in an FCA case, and the FCA's provisions are designed to incentivize *some* relator — not any particular relator — to promptly report violations so that the Government can investigate and recover. *See Wood*, 899 F.3d at 167, 174. From that perspective, the system here worked as designed: The Government had ample opportunity to intervene and bring its own claims against Allergan, but it ultimately decided not to do so. That reduces the probability that Allergan's escape from liability is a windfall. And in any event, as discussed, Wood was not "prevented" from timely filing by "rare and exceptional circumstances." Thus, he is not entitled to equitable tolling. It follows that Wood's primary FCA claims are, as he concedes, untimely and that Allergan's motion to dismiss Wood's primary FCA claims must be GRANTED.

That leaves Wood's retaliation claim under 31 U.S.C. § 3730(h) and his claims under the FCA's state-law analogs. With respect to the former, "the FCA's express limitations period does not apply to § 3730(h) actions. The most closely analogous state statute of limitations therefore applies." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 422 (2005). Accordingly, courts in this District have applied the "three-year limitations period borrowed from New York's residuary statute of limitations" to retaliation claims under

Section 3730(h). *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 302 (S.D.N.Y. 2014) (referring to N.Y. C.P.L.R. § 214). It follows that Wood's retaliation claim needed to be filed by July 6, 2013 — three years after he was allegedly terminated "in retaliation for his whistle-blowing activities," Compl. ¶ 266 — unless Wood is entitled to equitable tolling. *See Billiard Balls Mgmt., LLC v. Mintzer Sarowitz Zeris Ledva & Meyers, LLP*, 42 N.Y.S.3d 730, 737-38 (N.Y. Sup. Ct. 2016) (considering equitable tolling doctrines in applying N.Y. C.P.L.R. § 214). But the reasons for denying equitable tolling for Wood's primary FCA claims are even stronger with respect to his retaliation claim, which was not subject to the first-to-file bar at all. *See United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 306 (4th Cir. 2017) ("[T]he first-to-file rule has no relation to a claim for retaliation."). Wood argues that the Sixth Circuit's decision in *Bledsoe* supports equitable tolling, but *Bledsoe* did not involve retaliation claims, and unlike here, equitable tolling was deemed appropriate for the relator's primary FCA claims. *See Bledsoe*, 501 F.3d at 520. Thus, Allergan's motion to dismiss the retaliation claim is also GRANTED.

With all of Wood's federal claims gone, the Court declines to exercise supplemental jurisdiction over his state-law claims. Under 28 U.S.C. § 1367(a), a district court has discretion over whether to exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *accord Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013). Here, there is no basis to depart from that general rule. Although Wood initially filed his claims a very long time ago, the

11

case is, as a legal matter, still at an early stage.  Thus, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider do not counsel in favor of exercising jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Accordingly, Wood's state-law claims are dismissed without prejudice to refiling in state court. *See* 28 U.S.C. § 1367(c); *see also, e.g.*, *United States ex rel. Borzilleri v. AbbVie, Inc.*, No. 15-CV-7881 (JMF), 2019 WL 3203000, at *3 (S.D.N.Y. July 16, 2019).

## CONCLUSION

In this Court's prior decision, the Court observed that dismissal pursuant to the first-to-file rule may well be "dispositive" because, "[d]uring the six years in which the Government investigated Wood's claims and the case remained under seal, the statute of limitations" continued to run.  *Wood I*, 246 F. Supp. 3d at 793.  In fact, that was one of the reasons that, in this Court's view, Wood should be allowed to "cure" his violation of the first-to-file rule by amendment.  *See id.* at 798.  But the Second Circuit disagreed and this Court is bound by that ruling.  It is also bound by the plain terms of the FCA and the well-established precedent governing whether and when a plaintiff is entitled to equitable tolling.  That law compels the Court to conclude that Wood's latest effort to bring FCA claims against Allergan is indeed time barred.  Accordingly, and for the reasons discussed above, Allergan's motion to dismiss is GRANTED, and Wood's Complaint is dismissed.

The Clerk of Court is directed to terminate ECF No. 25 and to close the case.

SO ORDERED.

Dated: June 10, 2020
      New York, New York

                                              JESSE M. FURMAN
                                          United States District Judge